In re Miller.

In the matter of the petition of Ezra W. Miller, trustee, for leave to use trust moneys to erect building.

[Argued December 4th, 1900.    Decided March 28th, 1901.
Filed May 13th, 1901.]

1. An order made by the chancellor under the "Act empowering executors and trustees, holding land and real estate in trust, to improve the same and erect buildings thereon," approved April 9th, 1897 (*P. L. of 1897 p. 190*), is appealable.

2. Where the proof leaves it doubtful that an improvement proposed under said act will be beneficial to the trust it should not receive judicial sanction.

On appeal from an order advised by Vice-Chancellor Pitney, who delivered no opinion.

Ezra Miller, late of the township of Hohokus, in the county of Bergen, died July 12th, 1885, leaving a last will and testament, published December 26th, 1883, which was duly admitted to probate by the orphans court of the county of Bergen. The sixth clause of this will is as follows:

"*Sixth*. I give and bequeath my homestead farm, situate in the said township of Hohokus, which was conveyed to me in several different parcels by the following deeds, viz.: * * * making about three hundred and fifty-six and thirty-five one-hundredths acres in all, together with the household furniture and farming implements and tools, unto my son, Ezra W. Miller, my friends, William Walter Phelps and Garret Ackerson, Jr., and the survivor of them, their heirs and assigns, in trust that they and the survivor of them will rent and manage the same, and collect the rents, income and profits thereof, and pay the taxes, repairs, insurance and all other expenses incident to the management of said farm and divide the net proceeds thereof from time to time at the discretion of said trustees among my five children, Ezra W. Miller, Amanda Josephine Hinman, Harriet Martha Van Kirk, Jordan G. Miller and Franklin P. Miller, and in case of the death of either of my said children, the children of the person so dying to receive their parent's share. And upon the further trust that my said trustees and the survivor of them, after the death of my last surviving child shall sell and dispose of my said farm and furniture and farming implements at public or private sale in such portions and at such times as my said trustees in their discretion may think proper, and pay the proceeds thereof as follows: one-fifth thereof to the lawful heirs of my

son Ezra W. Miller, one-fifth thereof to the lawful heirs of my daughter Amanda Josephine Hinman, one-fifth thereof to the heirs of my daughter Harriet Martha Van Kirk, one-fifth thereof to the heirs of my son Jordan G. Miller, one-fifth thereof to the heirs of my son Franklin P. Miller."

Of the trustees named, who were also executors of the will, Erza W. Miller alone survives. Of the children named all except Harriet Martha Van Kirk survive, and are of full age. Mrs. Van Kirk died April 14th, 1897, leaving her surviving two children, Mabel Van Kirk, now of full age, and John Henry Van Kirk, now about eighteen years old.

At the time of the death of the testator there was upon his homestead farm a house of twenty-two rooms, arranged and occupied for a private residence, which had cost him about $60,000, a complete set of farm buildings and a reservoir for a water supply. Upon the death of the testator an attempt was made to lease the premises, but no tenant willing to pay more than $500 per year was found, and therefore, with the consent of the other children, Ezra W. Miller occupied the same, paying taxes and fire insurance premiums and keeping the premises in repair. He established there a business of taking summer boarders. On August 29th, 1899, the superstructure of the dwelling-house was destroyed by fire. The trustee having received, or being about to receive, the sum of $20,000 from insurance, presented to the chancellor, in November, 1899, his petition representing that, by reason of the long use and well-established reputation of his boarding-house, the best use for the insurance money would be in erecting a first-class boarding-house or rural inn upon the existing foundation, and praying authority to use the same for that purpose. Upon this petition such proceedings were had that, on September 17th, 1900, the trustee was authorized, by the chancellor's order, to enter into a contract for the erection of an inn or hotel, according to designated plans and specifications, for a sum not to exceed $27,000, upon condition that a competent tenant, experienced in the hotel business, should be procured to take a lease of the premises for five years from the time of the completion of the building, at an annual rental of $2,500, giving sufficient security for the payment of the rent, with the right to an abatement of one-half of such rent for the first year

In re Miller.

and one-quarter thereof for the second year of the term. From this order Mabel Van Kirk, Jordan G. Miller and Franklin P. Miller have appealed.

*Mr. Robert L. Lawrence,* for the appellants.

*Mr. Anderson Price* and *Mr. William H. Corbin,* for the respondent.

The opinion of the court was delivered by

COLLINS, J.

There is in the mind of some members of this court great doubt of the power of the chancellor, as against the objections of owners *sui juris,* to make such an order as he has made in this case. We have found no inherent equitable jurisdiction to make it, and, indeed, the respondent urges no support for it other than "An act empowering executors and trustees, holding land and real estate in trust, to improve the same and erect buildings thereon," approved April 9th, 1897. *P. L. of 1897 p. 190.* If the legislature has power, after the death of a testator, to supersede the provisions of his will, it is not clear that the statute cited applies to a case like that before us.

But we need not decide doubtful questions, for we are all agreed that, on the merits of the application, the order made was not justified. The main reasons for supporting it are that the testator's so-called farm was originally wild land, in the midst of attractive mountain scenery, reclaimed with great difficulty and expense; that it is not valuable for agriculture, and, unless kept up by constant care, will relapse into a wilderness, and that the foundation referred to, which is very substantial, should in some way be made available to the trust. It is the opinion of the architect who has made the plans for the proposed rural inn that such an inn would be profitable if golf links and other improvements should be made, and that if the inn is built and occupied and the surrounding grounds are kept up, and the farm buildings and reservoir are utilized, the character of the vicinity is such that there will be a greater value in the property when the time

In re Miller.

fixed by the testator for its sale shall arrive than there otherwise
would be.   The trustee and one of his boarders and a gentleman
living in the neighborhood share this opinion, which may be well
founded, but it is plain that the matter must be largely one of
experiment.   It is conceded that, with the same external attrac-
tions, except such as would require further expenditure, a twenty-
two roomed house of a most substantial character has not been
capable of producing even $500 annual income.   To build a
cheaper house on the same foundation, even though more com-
modious and better arranged for the purpose of keeping summer
boarders, in the hope of getting a much larger revenue, is to
assume a greater risk than we are willing to authorize against
the active opposition of most of the persons interested.   Two
of the four surviving children of the testator have appealed from
the chancellor's order.   Another, while not formally appealing,
is shown, by the proof, to be strongly opposed to the project.   The
only one of the heirs of the deceased child who is of age joins in
appeal, and she, at least, has a vested remainder, and therefore
that standing, additional to the other appellants, who are merely
life tenants.   The rights of mere life tenants, however, must not
be overlooked, in the effort to preserve the *corpus* of the estate
for those unknown persons who may, in the remote future, suc-
ceed to it.   An investment of $28,000 will afford a considerable
income.   The possible rental of a summer hotel, which may not
prove successful, is at best a doubtful substitute therefor.

The learned vice-chancellor guarded the order he advised by
the condition that a tenant for five years can be procured who
will give security for the payment of a rental which, undoubtedly,
would be beneficial to the trust, but the very fact that he thought
such a condition necessary shows that the venture must, at best,
be a doubtful one.   The rebate from the first year's rent leaves
the objectors not so well off as with a five per cent. investment,
and should the enterprise prove a failure, the security which will
be exacted will not be a very satisfactory alternative.   At most, a
revenue for five years only is secured, and if the rural inn should
not prove as attractive as the architect thinks it will be, the pros-
pects of future revenue will, of course, be correspondingly dimin-
ished.   The building would require to be kept in repair, with no

income available therefor except that which experience has shown to be very meagre.

Where the proof leaves it doubtful that an improvement proposed under the act involved in this case will be beneficial to the trust, it should not receive judicial sanction.

It is urged that the chancellor's order rests in discretion; but we think it comes within the class of appealable matters. It substantially affects equitable, if not legal, rights, and thus is a proper subject of appeal. *Camden and Amboy Railroad Co.* v. *Stewart, 6 C. E. Gr. 484, 488.*

The appellants are entitled to a reversal of the order appealed from and to an order denying the prayer of the trustee's petition.

*For reversal*—THE CHIEF-JUSTICE, DIXON, COLLINS, FORT, GARRETSON, HENDRICKSON, BOGERT, ADAMS, VREDENBURGH, VOORHEES—10.

*For affirmance*—None.